## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

DAVID O'KEEFE,

*Plaintiff*,

v.

THE CITY OF NEW YORK, ALLIED UNIVERSAL, BOP NE LLC, BROOKFIELD PROPERTIES, and NEW YORK CITY POLICE OFFICERS JAMES FARRELL and MARIAN BENCEA,

*Defendants*.

Case No.: 1:25-cv-10532

**COMPLAINT FOR COMPENSATORY, DECLARATORY AND INJUNCTIVE RELIEF**

**JURY TRIAL DEMANDED**

Michael Linhorst
Daniela del Rosario Wertheimer (*pro hac vice* forthcoming)
Cornell Law School First Amendment Clinic
Myron Taylor Hall
Ithaca, New York 14853
Tel.: (607) 255-8518
MML89@cornell.edu
DDW83@cornell.edu

Gideon Oliver
277 Broadway, Suite 1501
New York, New York 10007
Tel: (718) 783-3682 x 5
Gideon@GideonLaw.com

*Counsel for Plaintiff*

Plaintiff David O'Keefe ("Mr. O'Keefe"), by and through his attorneys, respectfully submits this Complaint against Defendants the City of New York, Brookfield Properties and BOP NE LLC (together, "Brookfield"), Allied Universal, and New York City Police Officers James Farrell and Marian Bencea (collectively, "Defendants") for violations of Plaintiff's rights under, *inter alia*, the First Amendment to the United States Constitution and Article I, Section 8 of the New York Constitution, and for violations of the New York City Zoning Resolution, and hereby alleges as follows:

**PRELIMINARY STATEMENT**

1.     Throughout New York City, there are hundreds of spaces that are privately owned but that, because of an agreement between the property owner and New York City, are open to the public and indistinguishable from public sidewalks, plazas, or parks. These are spaces where commuters walk to work, tourists gather, shoppers stroll — and where people sometimes hold protests.

2.     In exchange for creating one of these privately owned public spaces ("POPS"), the City allows the property owner to construct a larger building than the City's Zoning Resolution would otherwise permit.

3.     POPS constitute over 3.8 million square feet of public space in New York City, the equivalent of nine Bryant Parks.

4.     Mr. O'Keefe protested in one of these POPS on April 2, 2025. A retired prosecutor, Mr. O'Keefe objected to the agreement by law firm Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") to provide free legal services in support of initiatives backed by President Donald Trump in exchange for avoiding a presidential executive order with the potential to economically damage Skadden. Mr. O'Keefe stood alone on the pavement outside Skadden's headquarters in

Midtown Manhattan, holding a sign and quietly making his views known to the public and to Skadden employees as they walked into their office.

5.       A photograph of Mr. O'Keefe conducting this protest is included below as **Figure 1.**



6.       The building that houses Skadden's offices is bordered by a POPS, which is where Mr. O'Keefe stood during his protest. Defendant Brookfield is the owner of this POPS.

7.       Defendant Allied Universal, as an agent of Brookfield, refused to allow Mr. O'Keefe to exercise his First Amendment rights within the POPS and unlawfully instructed Mr. O'Keefe to leave. Mr. O'Keefe declined to leave. Upon information and belief, Brookfield and Allied Universal then called the New York City Police Department ("NYPD") to have Mr. O'Keefe removed. NYPD arrived and told Mr. O'Keefe to leave the POPS; when he again declined, citing his right to protest there, NYPD arrested him.

8.    This action arises from Mr. O'Keefe's wrongful exclusion from and arrest in the POPS in violation of, *inter alia*, the First Amendment of the U.S. Constitution and Article 1, Section 8 of the New York Constitution.

9.    The public has a right to protest in POPS. Mr. O'Keefe protested peacefully and unobtrusively; he was not blocking any pedestrian traffic or making loud noise.

10.    Mr. O'Keefe's protest, objecting to Skadden's capitulation to the threat of an unconstitutional executive order, is precisely the type of "speech on matters of public concern that is at the heart of the First Amendment's protection." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758–59 (1985).

11.    Due to Mr. O'Keefe's wrongful arrest and his fear that he will be arrested again as he continues to protest in the POPS, he files this action to protect his First Amendment and other rights. He seeks a declaration that POPS are public forums in which full First Amendment rights apply and an injunction prohibiting the City, Brookfield, and Allied Universal from interfering with his peaceful protests in the POPS, including by arresting him. Mr. O'Keefe additionally seeks relief from Brookfield's violation of the New York City Zoning Resolution and the City's failure to enforce the New York City Zoning Resolution. Finally, Mr. O'Keefe seeks compensatory and punitive damages and costs and attorneys' fees, along with such further relief as this Court may deem just and equitable.

## PARTIES

12.    Plaintiff David O'Keefe is a retired attorney residing in Brooklyn, New York.

13.    Defendant BOP NE LLC is a subsidiary of Brookfield Properties. BOP NE LLC's principal office is located at Brookfield Place, 250 Vesey Street, New York, N.Y. 10281.

14.     Defendant Brookfield Properties is a global real estate firm that operates real estate investments for Brookfield Corporation. Brookfield Properties is a business entity registered to do business in New York, with its headquarters located at Brookfield Place, 250 Vesey Street, New York, N.Y. 10281.

15.     Defendants Brookfield Properties and BOP NE LLC will be referred to collectively as "Brookfield."

16.     Brookfield owns and operates a POPS between 375 9th Avenue and 395 9th Avenue (the "Manhattan West POPS"). In public signage posted inside this POPS, Brookfield refers to this space as the "Central Plaza at the Ninth Avenue Rail Yard public access area."

17.     Defendant City of New York (the "City" or "City of New York") exists under the laws of the State of New York and operates and maintains the New York City Police Department ("NYPD") and New York City Department of Buildings ("DOB"). At all relevant times, NYPD officers acted within the scope of their employment and under color of law, making the City liable for their actions, and DOB was an agency of the City responsible for enforcing zoning resolutions and safety regulations within New York City.

18.     Defendants James Farrell and Marian Bencea are police officers with Sector C of the 10th Precinct of the NYPD and were the police officers who wrongfully arrested Mr. O'Keefe on April 2, 2025. Sector C of the 10th Precinct is located at 230 West 20th Street, New York, N.Y. 10011.

19.     Defendant Allied Universal provides security to commercial and corporate clients. Allied Universal is an agent of Brookfield and provides security at the Manhattan West POPS. On or about August 13, 2025, Allied Universal acquired Mulligan Security, which had previously

provided security at the Manhattan West POPS as an agent of Brookfield. Allied Universal is headquartered at 161 Washington Street, Suite 600, Conshohocken, PA 19428.

## JURISDICTION AND VENUE

20.    This is an action for violation of Mr. O'Keefe's First and Fourth Amendment rights, pursuant to 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments to the United States Constitution, violation of his rights under the New York Constitution and New York law, violation of New York City's Zoning Resolution, and violation of the New York City Administrative Code.

21.    Mr. O'Keefe timely served a Notice of Claim on Defendant City of New York.

22.    At least thirty days have passed since service of Plaintiff's Notice of Claim, and adjustment and payment have been neglected or refused by the City of New York.

23.    Mr. O'Keefe has complied with all the requirements, obligations, and conditions prior to commencing an action against New York City under New York law.

24.    This Court has subject-matter jurisdiction over the First and Fourth Amendment claims pursuant to 28 U.S.C. § 1331 and § 1343(a)(3).

25.    This Court has subject-matter jurisdiction over the remaining claims pursuant to 28 U.S.C § 1367(a).

26.    Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, respectively; by Rules 57 and 65 of the Federal Rules of Civil Procedure, respectively; by § 8-805 of the New York City Administrative Code; and by the general legal and equitable powers of this Court.

27.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1)-(2).

28.    All of the events or omissions giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

29.    President Donald Trump announced on March 28, 2025, that Skadden had agreed to provide $100 million in pro bono services for causes that President Trump supports.

30.    As a career prosecutor who views the independence of lawyers and the maintenance of the rule of law as critically important, Mr. O'Keefe opposed Skadden's deal. He believes the law firm exhibited cowardice and subverted the rule of law by agreeing to the deal with the Trump Administration.

31.    On April 2, 2025, five days after the deal was announced, Mr. O'Keefe chose to publicly register his disapproval of Skadden's action by protesting outside the firm's New York City office. The office is located in One Manhattan West, an office building at 395 9th Avenue, owned by Defendant Brookfield.

32.    Mr. O'Keefe stood on the pavement outside the building, in an area that allowed both Skadden employees on their way into their office building and other passersby to see his protest.

33.    This area where Mr. O'Keefe protested was in the Manhattan West POPS, owned and operated by Defendant Brookfield.

34.    The Manhattan West POPS is seamlessly integrated into the surrounding sidewalk and street-grid system. It connects several high-traffic areas, providing a pedestrian path from Moynihan Train Hall to nearby office buildings and retail, and allowing pedestrians to continue on to the High Line and Hudson Yards.

35.    The space also includes multiple public seating areas, greenery, and retail stores that can only be accessed via the POPS.

36.     Brookfield has allowed other protests to take place in the Manhattan West POPS and allows a range of other activities and public events to take place there, including events with political messages.

37.     New York City POPS are created pursuant to an agreement between the property owner and the City, and they are governed by the New York City Zoning Resolution, sections 37-70 through 37-78.

38.     In exchange for the property owner constructing a POPS, the City will often provide the property owner with bonus floor area, allowing the construction of a larger building than the New York City Zoning Resolution would otherwise permit. Zoning Resolution § 35-35.

39.     In exchange for this benefit, and pursuant to the New York City Zoning Resolution, all POPS, including the Manhattan West POPS, must remain open to the public 24 hours a day, unless the City agrees to nighttime closure. *Id*. § 37-727. Property owners must also prominently post a sign reading "Open To Public" at POPS entrances. *Id*. § 37-751.

40.     POPS, including the Manhattan West POPS, must include amenities typical of public parks — such as seating and plants — as well as space that functions as a public sidewalk, allowing pedestrian flow through the POPS. *Id*. §§ 37-723 & 37-74.

41.     While the Zoning Resolution's specific requirements for POPS have been amended several times since POPS were first introduced in 1961, one essential requirement has remained the same: the space must remain open to the public. *See, e.g.*, *id*. § 37-751.

42.     Throughout his protest in the Manhattan West POPS, Mr. O'Keefe stood to the side of the pedestrian walkway and did not impede pedestrian travel. He did not use sound amplification, nor did he shout or otherwise create any excessive noise or disturbance. At all times,

his protest was peaceful and did not impede the public use and enjoyment of the Manhattan West POPS.

43.     Mr. O'Keefe held a sign during his protest reading: "Hey Skadden I Found Your Spine In The Trash Lying Next To Your Values!" *See* Figure 1 *supra.* The sign further described Skadden as "Trump's $100 MILLION Lap Dog." *Id*. Along with the sign, Mr. O'Keefe held a replica human spine. *Id*.

44.     Mr. O'Keefe was entitled by law to peacefully protest in the Manhattan West POPS.

45.     However, during his protest, a security guard told Mr. O'Keefe that he was not permitted to protest while in the Manhattan West POPS and had to leave. The guard told Mr. O'Keefe that "they don't want that stuff here."

46.     Upon information and belief, the security guard was an employee of Mulligan Security, which was hired by Brookfield to provide security in the Manhattan West POPS. Mulligan Security was an agent of Brookfield.

47.     Mulligan Security has since been acquired by Defendant Allied Universal.

48.     Although Brookfield has posted rules that purportedly apply to anyone in the Manhattan West POPS, Brookfield never claimed that Mr. O'Keefe violated any rule, and he did not in fact violate any rule.

49.     Mr. O'Keefe continued his protest and declined to leave the POPS.

50.     Upon information and belief, Brookfield and/or its security guard agent then called NYPD to have Mr. O'Keefe removed from the POPS.

51.     Officers Farrell and Bencea arrived and told Mr. O'Keefe that he could not remain at the Manhattan West POPS without permission from the owner.

52.     NYPD has a history of wrongfully forcing protesters to leave POPS.

53. Mr. O'Keefe declined to leave the POPS or cease his protest. Mr. O'Keefe asked Officers Farrell and Bencea to contact NYPD's legal bureau so they could be advised of the legality of his protests. Upon information and belief, they did not do so.

54. Officers Farrell and Bencea then arrested Mr. O'Keefe. He was handcuffed, taken to the 10th Precinct, searched, and held in a cell for an hour and a half before being released with a Criminal Court summons charging him with a trespass violation.[1]

55. Since his arrest, Mr. O'Keefe has regularly continued protesting Skadden's deal with President Trump, including by protesting in the Manhattan West POPS outside Skadden's office.

56. Mr. O'Keefe has continued his protests because he believes in the importance of the rule of law and in publicly objecting to law firms like Skadden engaging in what he views as acquiescence to inappropriate government pressure. However, since his unlawful arrest, he has felt anxious each time he has exercised his right to protest. He fears that it is just a matter of time before he is arrested again.

57. In fact, Brookfield and/or its agents, including Allied Universal employees, have continued harassing Mr. O'Keefe while he protests in the Manhattan West POPS, repeatedly claiming that he cannot protest in that space and instructing him to leave.

58. Such attempts to interfere with his protest right include instances on April 4, 2025, April 11, 2025, and September 15, 2025. Each time, Brookfield and/or its agents instructed Mr. O'Keefe to leave the Manhattan West POPS while he was protesting there. Mr. O'Keefe declined to leave, and he continued his protest. True and correct photographs of the signs

---

[1] The NYPD ultimately failed to file a legally acceptable accusatory instrument with the New York City Criminal Court.

Mr. O'Keefe carried during his protests on these dates are attached as **Exhibits A, B,** and **C**, respectively.

## CLAIMS FOR RELIEF

### FIRST CLAIM

<u>VIOLATION OF FREE SPEECH GUARANTEE OF THE FIRST AMENDMENT TO THE U.S. CONSTITUTION, AGAINST THE CITY OF NEW YORK AND OFFICERS FARRELL AND BENCEA</u>

59.    Mr. O'Keefe repeats the allegations set forth above in paragraphs 1 to 58 as if fully set forth herein.

60.    Mr. O'Keefe's protest on April 2, 2025, is protected speech under the First Amendment.

61.    Under the First Amendment, individuals have a right to protest in public forums, subject only to necessary, narrowly tailored, and content-neutral time, place, and manner restrictions.

62.    In limited-purpose public forums, individuals' speech and protest rights under the First Amendment may only be restricted if such activities fall outside the purposes for which the forum has been opened and the restrictions are reasonable and viewpoint-neutral.

63.    The Manhattan West POPS is a public forum.

64.    In the alternative, the Manhattan West POPS is a limited-purpose public forum that has been opened for political speech.

65.    The City of New York is a state actor.

66.    By ordering Mr. O'Keefe to cease his protest and leave the public forum, and then arresting him when he did not, Defendants Farrell and Bencea, along with the City of New York, violated Mr. O'Keefe's First Amendment right to free speech.

67.    Mr. O'Keefe's First Amendment-protected speech was the cause of his arrest.

10

68.     The City of New York, through the NYPD, has a pattern of similar constitutional violations in POPS.

69.     The City of New York has additionally failed to train officers on the rights of New Yorkers in POPS, showing a deliberate indifference to the risk of First Amendment harm the lack of training creates.

70.     As a result of Mr. O'Keefe's arrest, he was deprived of his rights and was otherwise damaged and injured.

71.     As Mr. O'Keefe continues his protesting at the Manhattan West POPS and fears that he will be arrested again, his constitutional injuries are ongoing.

## SECOND CLAIM

<u>VIOLATION OF FREE SPEECH GUARANTEE OF THE FIRST AMENDMENT TO THE U.S. CONSTITUTION, AGAINST BROOKFIELD AND ALLIED UNIVERSAL</u>

72.     Mr. O'Keefe repeats the allegations set forth above in paragraphs 1 through 71 as if fully set forth herein.

73.     The Manhattan West POPS is a public forum or, in the alternative, a limited-purpose public forum.

74.     Defendants Brookfield and Allied Universal maintain and police the Manhattan West POPS.

75.     In doing so, Brookfield and Allied Universal operate the Manhattan West POPS in the same way a government traditionally operates a public forum.

76.     Brookfield and Allied Universal exercise a power that has traditionally been exclusively held by the state.

77.     Brookfield and Allied Universal, and/or their agents, employees, or predecessor, ordered Mr. O'Keefe to leave the Manhattan West POPS during his protest.

78.    Brookfield and Allied Universal acted together with the NYPD to force Mr. O'Keefe to leave the Manhattan West POPS during his protest and to subsequently arrest him when he asserted his right to protest in the space.

79.    Thus, Brookfield and Allied Universal were acting under color of state law.

80.    Further, there is a sufficiently close nexus between Brookfield, Allied Universal, and the NYPD such that Brookfield and Allied Universal's actions may be fairly attributed to that of the government itself.

81.    Brookfield and Allied Universal were acting under color of law in collusion with the NYPD.

82.    Brookfield and Allied Universal thereby violated Mr. O'Keefe's First Amendment right to free speech.

83.    Mr. O'Keefe's constitutional injuries are ongoing, including through the continuing harassment by Brookfield and Allied Universal during Mr. O'Keefe's protests at the Manhattan West POPS.

**THIRD CLAIM**

<u>VIOLATION OF FREE SPEECH GUARANTEE OF ARTICLE I, SECTION 8 OF THE NEW YORK CONSTITUTION, AGAINST THE CITY OF NEW YORK AND OFFICERS FARRELL AND BENCEA</u>

84.    Mr. O'Keefe repeats the allegations set forth above in paragraphs 1 through 83 as if fully set forth herein.

85.    Mr. O'Keefe's protest on April 2, 2025, is protected speech under the New York Constitution.

86.    By ordering Mr. O'Keefe to cease his protest and leave the public forum, and then arresting him when he did not, the City, through the NYPD, violated Mr. O'Keefe's Article 1, Section 8 right to speech.

87.     In committing the acts alleged herein, Defendants Farrell and Bencea were members and agents of the NYPD, acting at all relevant times within the scope of their employment with Defendant City of New York.

88.     Mr. O'Keefe's constitutional injuries are ongoing.

## FOURTH CLAIM

### VIOLATION OF FREE SPEECH GUARANTEE OF ARTICLE I, SECTION 8 OF THE NEW YORK CONSTITUTION, AGAINST BROOKFIELD AND ALLIED UNIVERSAL

89.     Mr. O'Keefe repeats the allegations set forth above in paragraphs 1 through 88 as if fully set forth herein.

90.     Mr. O'Keefe's protest on April 2, 2025, is protected speech under the New York Constitution.

91.     By ordering Mr. O'Keefe to cease his protest and leave the public forum, Defendants Brookfield and Allied Universal violated Mr. O'Keefe's Article 1, Section 8 right to speech.

92.     Brookfield and Allied Universal were acting under color of law, including in collusion with the NYPD.

93.     By acting jointly with NYPD to arrest Mr. O'Keefe when he declined to cease his protest and leave the public forum, Brookfield and Allied Universal violated Mr. O'Keefe's Article 1, Section 8 right to speech.

94.     Mr. O'Keefe's constitutional injuries are ongoing.

## FIFTH CLAIM

### VIOLATION OF THE NEW YORK CITY ZONING RESOLUTION, AGAINST BROOKFIELD

95.     Mr. O'Keefe repeats the allegations set forth above in paragraphs 1 through 94 as if fully set forth herein.

96.    New York City Zoning Resolution section 37-727 requires that POPS remain open to the public.

97.    The New York City Zoning Resolution establishes POPS as public forums or, in the alternative, limited-purpose public forums.

98.    Defendant Brookfield violated the requirements of the Zoning Resolution when it and/or its agents or employees told Mr. O'Keefe to leave the Manhattan West POPS due to his protest.

99.    Brookfield violated the requirements of the Zoning Resolution when it and/or its agents or employees asked NYPD to remove Mr. O'Keefe from the Manhattan West POPS due to his protest.

100.    Mr. O'Keefe suffered a direct, distinct harm by being told to leave the Manhattan West POPS due to his protest, in violation of the Zoning Resolution.

101.    He additionally suffered a direct, distinct harm by being removed from the Manhattan West POPS due to his protest, in violation of the Zoning Resolution.

**SIXTH CLAIM**

<u>FAILURE TO ENFORCE NEW YORK CITY ZONING RESOLUTION, AGAINST THE CITY OF NEW YORK</u>

102.    Mr. O'Keefe repeats the allegations set forth above in paragraphs 1 through 101 as if fully set forth herein.

103.    The New York City Charter tasks Defendant City of New York, through its agency DOB, with enforcing the New York City Zoning Resolution. New York City Charter, Ch. 26, § 643 (2025).

104.    Defendant Brookfield violated the Zoning Resolution by repeatedly telling Mr. O'Keefe to leave the Manhattan West POPS due to his protest, and additionally by asking NYPD to remove Mr. O'Keefe from the Manhattan West POPS due to his protest.

105.    Mr. O'Keefe suffered a direct, distinct harm by being told to leave the Manhattan West POPS due to his protest, in violation of the Zoning Resolution.

106.    DOB failed to enforce the Zoning Resolution's requirements that POPS remain open to the public, despite repeated infractions by Defendant Brookfield.

107.    On information and belief, DOB was aware of Brookfield's previous infractions of closing POPS to protestors in violation of the Zoning Resolution.

**SEVENTH CLAIM**

<u>WRONGFUL ARREST OF DAVID O'KEEFE BY THE CITY OF NEW YORK AND OFFICERS FARRELL AND BENCEA UNDER THE FIRST AND FOURTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND NEW YORK LAW</u>

108.    Mr. O'Keefe repeats the allegations set forth above in paragraphs 1 through 107 as if fully set forth herein.

109.    NYPD Officers Farrell and Bencea, working as agents of the City of New York, intentionally arrested Mr. O'Keefe on April 2, 2025, due to his protest in the Manhattan West POPS.

110.    Mr. O'Keefe did not consent to his arrest.

111.    Mr. O'Keefe was aware of his arrest and his confinement.

112.    Mr. O'Keefe's arrest was made without a warrant.

113.    Mr. O'Keefe had a right to peacefully protest within the Manhattan West POPS. His protest was neither unlawful nor against the Manhattan West POPS rules.

114.    There was no probable cause for Mr. O'Keefe's arrest.

115.    In committing the acts alleged herein, Defendants Farrell and Bencea were members and agents of the NYPD, acting at all relevant times within the scope of their employment.

116.    Thus, the City of New York is liable for Mr. O'Keefe's wrongful arrest pursuant to the Fourth and Fourteenth Amendments to the U.S. Constitution, 42 U.S.C. § 1983, and the tort of false arrest based in New York law.

**EIGHTH CLAIM**

VIOLATION OF THE NEW YORK CITY ADMINISTRATIVE CODE §§ 8-802, 8-803
AGAINST THE CITY OF NEW YORK AND OFFICERS FARRELL AND BENCEA

117.    Mr. O'Keefe repeats the allegations set forth above in paragraphs 1 through 116 as if fully set forth herein.

118.    Defendants Farrell and Bencea subjected Mr. O'Keefe to an unreasonable seizure in violation of New York City Administrative Code § 8-802 by falsely arresting him on April 2, 2025.

119.    To the extent that Officers Farrell or Bencea did not personally falsely arrest Mr. O'Keefe, they were nevertheless aware that Mr. O'Keefe was being arrested for his lawful protest activities and had ample opportunity to intervene to prevent Mr. O'Keefe's arrest from occurring, but they failed to intervene.

120.    Defendant City of New York is liable under New York City Administrative Code § 8-803 for the acts of its employees, including Officers Farrell and Bencea.

121.    Therefore, Officers Farrell and Bencea and the City of New York are liable for unreasonably seizing Mr. O'Keefe through false arrest in violation of New York City Administrative Code §§ 8-802 and 803.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully asks that the Court:

A.      Declare that New York City's Privately Owned Public Spaces ("POPS"), as defined in New York City Zoning Resolution sections 37-70 through 37-78, are public forums in which individuals are entitled to full First Amendment rights;

B.      In the alternative, declare that POPS are limited-purpose public forums in which individuals are entitled to their First Amendment rights to speak, protest, and assemble subject to reasonable and viewpoint-neutral time, place, and manner restrictions;

C.      Enjoin Defendant City of New York from arresting Mr. O'Keefe or any other individual for protesting in a POPS or from ordering such individuals to cease their protest or leave the POPS for engaging in constitutionally protected speech;

D.      Order Defendants Brookfield and Allied Universal to allow Mr. O'Keefe and any other individual to exercise their full First Amendment rights, including the right to peacefully protest, in the Manhattan West POPS;

E.      Order Defendant City of New York to enforce the Zoning Regulation's requirement that POPS are open to the public, including members of the public who exercise their First Amendment rights;

F.      Award money damages to Mr. O'Keefe due to the harm he has suffered from the unlawful and unconstitutional actions of Defendants, including, but not limited to, compensatory and punitive damages;

G.      Award Mr. O'Keefe his reasonable attorneys' fees and costs, pursuant to 42 U.S.C. §1988 and N.Y.C. Admin. Code § 8-805; and

H.      Grant any and all further relief that this Court may deem just and proper.

Dated: December 18, 2025

                              Respectfully submitted,

                              By:  /s/ *Michael Linhorst*

                              Michael Linhorst
                                  (S.D.N.Y. Bar No. 5600168)
                              Daniela del Rosario Wertheimer
                                  (*pro hac vice* forthcoming)
                              Cornell Law School First Amendment Clinic
                              Myron Taylor Hall[2]
                              Ithaca, New York 14853
                              Tel.: (607) 255-8518
                              MML89@cornell.edu
                              DDW83@cornell.edu

                              Gideon Oliver
                                  (S.D.N.Y. Bar No. GO8799)
                              277 Broadway, Suite 1501
                              New York, New York 10007
                              Tel: (718) 783-3682 x 5
                              Gideon@GideonLaw.com

                              *Counsel for Plaintiff*

---

[2] Clinic students Jonas Baune and John Lauro drafted portions of this complaint. The First Amendment Clinic is housed within Cornell Law School and Cornell University. Nothing in this complaint should be construed to represent the views of these institutions, if any.